Nos. 23-2180 & 23-2181

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

**Anthony Dunn, et al.,**

*Plaintiff-Appellants/Cross-Appellees,*

**v.**

**Santa Fe Natural Tobacco Co., et al.,**

*Defendants-Appellees/Cross-Appellants.*

On Appeal From The United States District Court
For The District Of New Mexico

No. 1:16-md-2695-JB-LF (MDL No. 2695)
(The Honorable James O. Browning)

## REPLY BRIEF OF DEFENDANTS-APPELLEES/CROSS-APPELLANTS

Melanie B. Stambaugh
**RODEY, DICKASON,
SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
mstambaugh@rodey.com
505-768-7288

David M. Monde
**JONES DAY**
1221 Peachtree Street NE
Suite 400
Atlanta, GA 30309
dmmonde@jonesday.com
404-521-3939

Meir Feder
Sharyl A. Reisman
**JONES DAY**
250 Vesey Street, Floor 34
New York, NY 10281
mfeder@jonesday.com
sareisman@jonesday.com
212-326-3939

Noel J. Francisco
William D. Coglianese
**JONES DAY**
51 Louisiana Avenue NW
Washington, DC 20001
njfrancisco@jonesday.com
wcoglianese@jonesday.com
202-879-3939

*Counsel for Defendants-Appellees/Cross-Appellants*

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................... 1

ARGUMENT............................................................................ 3

I.   Plaintiffs lack classwide proof of liability on their menthol-theory claims. . 3

   A. Proving who purchased NAS cigarettes would require many thousands of individual mini-trials......................................................... 4

   B. Plaintiffs lack classwide evidence of reliance and injustice.................. 17

II.  Plaintiffs' damages model does not fit their menthol theory of liability. ... 19

CONCLUSION ....................................................................... 27

CERTIFICATE OF COMPLIANCE........................................... 28

CERTIFICATE OF SERVICE ................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Conagra Foods, Inc.*,
    331 F.R.D. 641 (N.D. Cal. 2019) ........................................................... 25

*Amchem Products v. Windsor*,
    521 U.S. 591 (1997) ................................................................. 10, 11, 16

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................................................ 15

*Black v. Occidental Petrol. Corp.*,
    69 F.4th 1161 (10th Cir. 2023) ............................................................... 16

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) ................................................................ 13

*Carriuolo v. General Motors Co.*
    823 F.3d 977 (11th Cir. 2016) ................................................................ 22

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ..................................................................... 4

*CGC Holding Co., LLC v. Broad & Cassel*,
    773 F.3d 1076 (10th Cir. 2014) .............................................. 3, 7, 8, 10, 12

*Cherry v. Dometic Corp.*,
    986 F.3d 1296 (11th Cir. 2021) .............................................................. 13

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ............................................................. 2, 21, 26, 27

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
    317 F.R.D. 374 (S.D.N.Y. 2016) ............................................................ 23

*Hilsley v. Ocean Spray Cranberries, Inc.*,
    2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) ........................................ 23

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018) ..................................................................... 14

*In re Dial Complete Marketing & Sales Practices* Litigation,
320 F.R.D. 326 (D.N.H. 2017)...................................................................... 24

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
2012 WL 379944 (D.N.J. Feb. 6, 2012)....................................................... 19

*Lytle v. Nutramax Laboratories, Inc.*,
99 F.4th 557 (9th Cir. 2024) ....................................................................... 23

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ...................................................................... 13

*Savaglio v. Wal-Mart Stores, Inc.*,
2003 WL 25676640 (Cal. Super. Ct. Nov. 6, 2003) .................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2015) .............................................................................1, 14

*Valdez v. Grisham*,
2024 WL 2319752 (10th Cir. May 22, 2024)................................................ 4

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .....................................................................4, 10, 16

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017) ......................................................................... 23

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
725 F.3d 1213 (10th Cir. 2013)................................................. 9, 10, 11, 16

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 ................................... 4, 7, 9, 10, 11, 12, 15

# INTRODUCTION

Santa Fe agrees with Plaintiffs that the "focus" is "on *how* [they] propose proving their claims." Pls.' Resp. Br. 3. That inquiry dooms the district court's certification of six statewide menthol classes.[1] Repeatedly, Plaintiffs' response brief confirms that proving their menthol-theory claims would require fact-intensive, claimant-specific mini-trials into issues critical to liability and damages.

**I.** To start, liability on the menthol claims turns on "non-common, aggregation-defeating, individual issues" more than common ones. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2015). These include whether each claimant can prove that she purchased NAS menthol cigarettes—a prerequisite to establishing that she was injured. No purchase, no liability, no damages. Indeed, Plaintiffs *agree* that their claims require each class member "to demonstrate that they purchased NAS cigarettes." Pls.' Resp. Br. 51. But Plaintiffs continue to insist that this issue can be deferred to some "back-end claims administration" phase, *after* Santa Fe's liability—to a class in the abstract, apparently—is established. *Id.* at 55. That proposal defies the Rules Enabling Act, precedent, and logic. Claim elements must be proven *before* liability can be established, and Plaintiffs offer no basis for postponing the fundamental inquiry into purchase

---

[1] This reply brief is limited to Santa Fe's cross-appeal of the six certified menthol classes.

simply because that issue also bears on whether someone is a class member. Because proving purchase would require countless individual inquiries, the menthol classes fail Rule 23(b)(3)'s predominance requirement.

The menthol-theory claims would also require individual, predominance-defeating inquiries into reliance and injustice. Plaintiffs agree that their statutory claims require a "causal link" between Santa Fe's conduct and class members' supposed injuries. *Id.* at 15. But they have no *classwide* means of proving that link. They fall back on their damages model, but (as addressed below) that model fails. And as to their California unjust-enrichment claim, Plaintiffs are unable to dispute that—as the district court recognized for their other unjust-enrichment claims—the claim would require individual evidence, foreclosing certification.

**II.** The district court erred in certifying the menthol classes for the independent reason that Plaintiffs' proposed damages model fails to "measure *only* those damages attributable to [the class's] theory [of liability]." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (emphasis added). Plaintiffs' menthol theory is that NAS menthol consumers were deceived by the representation of "additive-free" tobacco, because the tobacco—despite being free of the many chemical additives in other cigarettes—contained some natural menthol flavoring that migrated from the filter. Accordingly, *Comcast* requires a model that measures the damages from *that* alleged deception: the difference in value (if any) between

(a) a menthol cigarette whose tobacco has no chemical additives and no migrated menthol, and (b) one whose tobacco *also* has no chemical additives, but has some natural menthol that migrated from the filter. Plaintiffs' model undisputedly does not do that. Instead, it would claim damages for the *entire* value of the "additive-free" representation. This means consumers would receive as damages not just whatever value they placed on menthol cigarettes having no menthol in the tobacco, but also the value of not having myriad other additives besides menthol—value that consumers undisputedly received. Plaintiffs' damages model thus fails *Comcast*, foreclosing Rule 23(b)(3) certification. *Id.* at 38.

This Court should thus reverse the portion of the district court's order certifying the six statewide menthol classes.

## ARGUMENT

### I.    Plaintiffs lack classwide proof of liability on their menthol-theory claims.

The Rule 23(b)(3) predominance inquiry focuses on the "legal and factual issues" underlying the putative class's claims. *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1086 (10th Cir. 2014). To assess predominance, courts must "survey" those legal and factual issues "to consider (1) which … are susceptible to generalized proof, and (2) whether those that are so susceptible predominate over those that are not." *Id.* at 1087. The menthol classes fail that inquiry in multiple ways.

**A.    Proving who purchased NAS cigarettes would require many thousands of individual mini-trials.**

**1.**    As Santa Fe explained in its first brief (at 25-33, 53-59), an essential component of each putative class member's claim is that she purchased NAS cigarettes—NAS *menthol* cigarettes, in particular, for the classes relevant to Santa Fe's cross-appeal. For a plaintiff in an individual lawsuit, failure to prove such purchases would defeat her claim. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("If this were an individual claim, a plaintiff would have to prove at trial he purchased [the product]."); *accord Valdez v. Grisham*, No. 22-2112, 2024 WL 2319752, at *3 (10th Cir. May 22, 2024) (affirming dismissal where named plaintiff sought damages "related to an event that never happened"). And because a class "cannot be certified" in a way that masks individual issues or "modif[ies] any substantive right," each class member here would likewise need to prove that she bought NAS menthol cigarettes. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (citation omitted).

Given that there is no classwide means of proving who bought NAS cigarettes—menthol or non-menthol—each class member's purchases would have to be proved individually. Plaintiffs therefore fail Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members."

The district court should have denied certification for this reason. As it recognized, there is no classwide proof of who bought NAS cigarettes—so proving liability would require many thousands of mini-trials, with discovery into each individual's claim and each claimant ultimately subject to cross-examination. 4 App. 256-58. But the district court went astray by predicting that this Court would treat this predominance of individual litigations as a mere manageability factor that weighs against certification. *Id.* at 252-58 & n.65. Indeed, the court declined to assess at all whether the need for these individual inquiries defeated Rule 23(b)(3) predominance, erroneously holding that it could deny certification only if a proposed class presented some *other* problem *in addition to* the need for mini-trials about purchase. *Id.* at 258.

**2.** In their response, Plaintiffs *agree* with Santa Fe on several foundational points. They accept "that any class member would need to demonstrate that they purchased NAS cigarettes to receive damages." Pls.' Resp. Br. 51. They abandon any pretense that there is classwide proof of purchasers.[2] And while they defend affidavits as a "permissible way to demonstrate entitlement to

---

[2] Plaintiffs' first brief referred vaguely to a "consumer database." Pls.' Opening Br. 58. After Santa Fe pointed out that the database is not a record of NAS purchasers (Defs.' Br. 27-28), Plaintiffs omitted any mention of the database (or other purported classwide proof of purchasers) in their second brief. Indeed, they now say it is "unsurprising" that they lack classwide proof of purchase. Pls.' Resp. Br. 45.

damages," they grant that "[o]f course … the defendants remain free to challenge the veracity of any particular affidavit." *Id.* Especially with those facts conceded, it is clear that Rule 23(b)(3) requires reversal of the portion of the order certifying the six statewide menthol classes.

In arguing to the contrary, Plaintiffs do not defend the district court's reasoning that led it to conclude that the need for countless individual inquiries into purchases is somehow consistent with predominance. In fact, they agree that the court "erred" in its approach. *Id.* at 46. Instead of defending the decision below on its own terms, Plaintiffs retreat to the same flawed arguments they made below and in their first brief in this Court. Those arguments remain incorrect.

*First*, Plaintiffs again try downplaying the key question underlying every consumer's claim—whether she purchased NAS cigarettes—as a mere "[q]uestion[] about claims administration" or "class membership," separate from "the elements of [the] claims." Pls.' Resp. Br. 43, 47. They then insist that such "questions about class membership are best considered *only* as part of the balancing analysis called for by [Rule 23's] superiority requirement"—and thus that they "do not go to predominance." *Id.* at 43, 47.

Everything about this is wrong. To start, Plaintiffs' insistence that "class membership" questions are distinct from "the elements of their claims" is unsound. *Id.* at 47. That a claimant purchased the product at issue is the most

fundamental element of her claim. And in any event, predominance is not limited to "elements" of putative class members' claims—the plain text of Rule 23(b)(3) says predominance focuses on all "questions of law or fact." Thus, as this Court has instructed, the predominance inquiry requires more comprehensively assessing "how the class intends to answer factual and legal questions to prove its claim[s]—and the extent to which the evidence needed to do so is common or individual." *CGC Holding*, 773 F.3d at 1087. Where those answers will turn predominantly on individual evidence, the justification for treating the case as a class action does not exist. *Id.*

That is the situation here. Again, Plaintiffs' menthol theory is that consumers were harmed because they "paid a price premium" for NAS menthol cigarettes "due to the misleading statement[]" that those cigarettes contain "additive-free" tobacco, when the tobacco "actually contained menthol—an additive." Pls.' Br. at 13-14; *see also, e.g.*, 1 App. 178, ¶ 88 ("Plaintiffs and the class members purchased, purchased more of, and/or paid more for Natural American Spirit cigarettes than they would have had they known the truth."). And Plaintiffs acknowledge that they must prove (among other elements) "causation" and "actual damages." Pls.' Br. 56 (citation omitted). A *sine qua non* of proving that any particular individual sustained damages caused by Santa Fe's alleged misconduct is that she *bought* NAS menthol cigarettes. Without a

purchase, she cannot have "paid a price premium" and been injured. Plaintiffs *concede* this point, agreeing that "any class member would need to demonstrate that they purchased NAS cigarettes to receive damages." Pls.' Resp. Br. 51.

In short, "answer[ing] [the] factual and legal questions to prove [Plaintiffs'] claim[s]" will predominantly turn on evidence that is individual, not common. *CGC Holding*, 773 F.3d at 1087. There is no escaping thousands of individual inquiries into purchases as part of proving not just class membership, but liability and damages. And indeed, Plaintiffs do *not* dispute the need for those inquiries; they just contend that the proof for those inquiries can be watered down to a cursory affidavit process that would not entail individual discovery, testimony, or cross-examination. Pls.' Resp. Br. 52.

Once proving purchases is recognized as essential to proving both liability and damages, the untenability of Plaintiffs' position—that individualized inquiries into purchase bear only on superiority and not on predominance—becomes clear. Plaintiffs acknowledge that predominance focuses on "questions of liability and damages." *Id.* at 47. But if a plaintiff does not prove she purchased the product, there can be no liability and no damages. And because it is *undisputed* that Plaintiffs cannot prove purchases with common evidence, the menthol classes fail Rule 23(b)(3)'s predominance requirement and cannot be certified. *See, e.g.*, *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213,

1220 (10th Cir. 2013) (holding that "Rule 23(b)(3)'s predominance criterion is far more demanding than Rule 23(a)'s commonality requirement," and that predominance is "destroyed" if "individualized issues will overwhelm those common to the class" (citation omitted)).

Plaintiffs seek to evade this by redefining the predominance requirement as one that "takes the existence of the class members as a given"—by which they mean "starts from the premise that class members are purchasers of NAS cigarettes or NAS menthol cigarettes." Pls.' Br. 47-48. But the predominance requirement does not permit assuming away any "questions of law or fact" (Rule 23(b)(3)) that will be necessary to proving class members' claims. After all, the point of the predominance inquiry is to determine whether class litigation is workable—which will not be the case if litigating the claims will devolve into individual inquiries, whether or not Plaintiffs would say those inquiries bear on "class membership." Pls.' Resp. Br. 43. The predominance inquiry thus looks at the anticipated litigation as a whole and asks—sensibly—whether common questions or individual ones will predominate.

Again, no individual plaintiff could simply "start[] from the premise" that she suffered injury. She would have to *prove* that element, which in this case means proving she purchased NAS menthol cigarettes. And the class-action mechanism does not allow Plaintiffs to take shortcuts around the proof required

of any individual plaintiff. Just the opposite: Because of the Rules Enabling Act, "a class cannot be certified on the premise that [the defendant] will not be entitled to litigate" its defenses to individual claims. *Wal-Mart*, 564 U.S. at 367.

Rule 23(b)(3)'s reference to "class members" therefore does not allow plaintiffs or courts to disregard any issue that bears on whether someone belongs to the class. To the contrary, that she purchased NAS menthol cigarettes—and how many packages she purchased—is a "question of law or fact" that each class member will have to prove to establish liability and damages.[3] In short, the predominance requirement cannot be so easily evaded. *See CGC Holding*, 773 F.3d at 1087 (courts must conduct a "rigorous analysis" into predominance); *XTO Energy*, 725 F.3d at 1217 ("Rule 23 is more than a pleading standard.").

Neither *Amchem Products v. Windsor* nor *XTO Energy* supports Plaintiffs' attempt at assuming away any inquiry into purchases. Pls.' Resp. Br. 48-50. Plaintiffs insist these cases help them because in neither one did the court address anticipated difficulties identifying class members. *Id.* at 49. But both decisions *rejected* class certification. That they did so without addressing questions of class membership—particularly when the parties opposing certification focused on other individualized issues—hardly supports a conclusion that questions

---

[3] Even if Plaintiffs were right that the predominance inquiry looks only at class members, that would not change the fact that every member would need to prove a purchase to have a claim—requiring individual inquiries.

touching on class membership are *sub silentio* excluded from the predominance analysis. *Amchem*, 521 U.S. 591, 624 (1997); *XTO Energy*, 725 F.3d at 1217-20.[4]

Plaintiffs are similarly unable to explain why the need for inquiries into purchases should be "considered *only* as part of the balancing analysis" under Rule 23(b)(3)(D)'s "manageability" criterion. Pls' Resp. Br. 43-46. They baldly assert that the "natural, text-based home" for assessing purchases is one of the "likely difficulties in managing a class action" (which Rule 23(b)(3)(D) addresses), and that this means those difficulties should be "[c]onfin[ed] … to the superiority analysis." Pls' Resp. Br. 44. But they do not point to anything in the text of the Rule that supports carving out purchases as an element of their claims that can matter *only* to manageability. Nor can they: Again, given Plaintiffs' concession that purchases are part of the claim that any class member must prove "to receive damages," there can be no dispute that proof of purchase is the type of "core liability question[]" that Plaintiffs agree is "properly considered as part of the predominance analysis." *Id.* at 50-51. There is thus no basis in Rule 23 for disregarding that aspect of Plaintiffs' case when assessing whether common

---

[4] That neither opinion focused on class membership also reflects the way those cases were litigated. In *Amchem*, the Supreme Court granted certiorari on the role a proposed settlement should play in the Rule 23 inquiry, and so the briefing and opinion focused on that issue. 521 U.S. at 619. In *XTO Energy*, this Court focused on the potential for variations in lease language, because that was the defendants' principal argument against certification. 725 F.3d at 1216.

questions predominate. Far from considering the significance of purchase inquiries "in a vacuum" (*id.* at 44 (citation omitted)), Santa Fe's approach ensures that the need for such inquiries is subject to the same "rigorous analysis" that all other aspects of class claims must receive. *CGC Holding*, 773 F.3d at 1087.

The foregoing puts to rest Plaintiffs' claim that Santa Fe is advocating an "extreme" position in conflict with the "vast majority of circuits." Pls.' Resp. Br. 2, 6-7, 39, 41, 42. There is nothing "extratextual," "atextual," or "implicit" about Santa Fe's position—nor is Santa Fe arguing for a "heightened" or "threshold" requirement that treats classwide proof of purchases as more important than classwide proof of other elements. *Id.* at 39, 42. On the contrary, Santa Fe's position is simply grounded in Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over *any* questions affecting only individual members" (emphasis added)—necessarily including questions about individual purchases in a consumer class action like this one. It is *Plaintiffs* who deviate from that plain text, asking this Court to excise from the predominance inquiry all questions bearing on "class membership"—without purporting to identify anything in the Rule that supports that approach.

Moreover, adopting Santa Fe's approach would align this Court with the majority view across circuits, most of which have recognized that the need for individual inquiries into class membership either forecloses certification or at

least bears on whether common questions predominate. *See* Defs.' Br. 56-57 (collecting cases). Plaintiffs charge Santa Fe with "cobbl[ing] together" these decisions because the courts have taken different paths to concluding that individual inquiries into purchases can defeat certification—which Santa Fe already noted. Pls.' Resp. Br. 42; Defs.' Br. 54-55. But the bottom line is that Santa Fe's position—that the need for such inquiries can prevent common issues from predominating—aligns with the approaches taken by these courts, which represent a majority of circuits to have considered the issue.

Plaintiffs' "cobbl[ing] together" accusation is particularly confounding given their assertion that "the majority of courts to consider the question have" adopted *their* position, by "hous[ing] considerations of administrative feasibility in the superiority analysis, and only the superiority analysis." Pls.' Resp. Br. 44. The three circuits Plaintiffs identify—against the five whose approaches support Santa Fe's position—are not a "majority." Counting exercises aside, *none* of Plaintiffs' preferred decisions addresses predominance—let alone explains how an issue that indisputably goes to liability and damages can be written out of the predominance inquiry altogether. *Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015).

**Second**, Plaintiffs insist that proving purchases of the product can be relegated to a "claims-administration phase" in which purported class members "will make claims on [a] class fund" that was "calculated on an aggregate basis." Pls.' Resp. Br. 50, 53. As Santa Fe has demonstrated (Defs.' Br 29-30), there is no legal basis for an aggregate "class fund" divorced from successful claims by individual claimants. Plaintiffs' notion that Santa Fe may be liable to the class as an aggregate entity cannot be squared with the "core principle" that "class actions are the aggregation of individual claims, and do not create a class entity or re-apportion substantive claims." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 56 (1st Cir. 2018) (citing 1 Newberg on Class Actions § 1:1 (5th ed. 2012)); *see also Bouaphakeo*, 577 U.S. at 458 (noting that "plaintiffs and defendants" have the same rights in class and individual proceedings, and thus requiring class plaintiffs to prove their claims as if asserting them "in an individual action").

This forecloses Plaintiffs' proposal of simply tallying how many "units" Santa Fe sold in the relevant states and multiplying that number by whatever price premium Plaintiffs could prove (if they had a valid damages model). Pls.' Resp. Br. 53-54 (citation omitted). Particularly given the outsize impact that an order certifying classes can have in driving resolution of a case, there is no justification for Plaintiffs' proposal to simply defer resolving a central aspect of their claims to some back-end stage. *See, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563

U.S. 333, 350 (2011) (noting "the risk of 'in terrorem' settlements that class actions entail," when defendants "[f]aced with even a small chance of a devastating loss … will be pressured into settling questionable claims").

In the end, Plaintiffs try to deflect attention from what Rule 23(b)(3) requires—that "questions of law or fact common to class members predominate over any questions affecting only individual members." They suggest that Santa Fe's "real beef" is that NAS consumers—who they concede are "unlikely" to have receipts for "small-dollar" purchases years ago—would need to rely on affidavits. Pls.' Resp. Br. 51-52. But Plaintiffs do not deny that Santa Fe would be entitled to challenge the veracity of each such affidavit, take discovery to develop any defenses, and ultimately cross-examine each claimant. *Id.* at 51. There is thus no escaping that proving liability will require thousands upon thousands of individual inquiries—meaning that questions affecting only individual members will overwhelm common ones.

***Finally***, Plaintiffs lament that, if proof of purchase is treated as part of the predominance analysis, the result may be "no claims brought at all." Pls.' Br. 38, 45, 51. But that cannot justify jettisoning required elements of proof, or disregarding Rule 23's plain text. To the contrary, this Court has held that it is error "[to] relax or shift the burden of proof to liberally construe Rule 23's requirements or resolve doubts in favor of certification." *Black v. Occidental Petrol. Corp.*,

69 F.4th 1161, 1174 (10th Cir. 2023); *see also, e.g.*, *XTO Energy*, 725 F.3d at 1218 ("Relaxing and shifting Rule 23(a)'s strict burden of proof results in an abuse of discretion." (citations omitted)). And *Wal-Mart* made clear that the proof requirements for individual claims cannot be modified to permit class treatment, since "the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right.'" 564 U.S. at 367 (quoting 28 U.S.C. § 2072(b)). The Court cannot lower the bar to accommodate Plaintiffs' preference for more class litigation than Rule 23(b)(3) allows. *See Amchem*, 521 U.S. at 622-23 (rejecting plaintiffs' policy arguments as "fit for legislative consideration … but … not pertinent to the predominance inquiry").

In any event, Plaintiffs' implicit premise—that a class action *would* result in consumers vindicating their claims—has no basis in reality. As Santa Fe showed (Defs.' Br. 32-33), and Plaintiffs do not even attempt to contest, the claims rates in most class actions like this one are miniscule.[5] And where claims *are* submitted, Plaintiffs themselves acknowledge a recent surge in fraudulent submissions. Pls.' Resp. Br. 53 n.9. They spin this as a success story for claims administrators' ability to catch fraudsters (*id.*), but that misses the bigger picture:

---

[5] One recent study suggests that the claims rate here would be in the low single digits, given that there is no practicable means of identifying and delivering notice to putative class members. Defs.' Br. 33 n.12 (discussing Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019), https://tinyurl.com/33zs796a).

The prevalence of fraudulent claims underscores the need for individualized testing of such claims where (as here) there is no classwide means of proof.

## B. Plaintiffs lack classwide evidence of reliance and injustice.

Independently, the district court erred in certifying the six statewide menthol classes because proving those claims would require individual inquiries into reliance (for the six statutory claims) and injustice (for the California unjust-enrichment claim). Defs.' Br. 59-61.

For the statutory claims, while Plaintiffs quibble over nomenclature (preferring "deception" or "causation" to "reliance"), they agree that the claims require "a causal link between the defendants' deceptive conduct and class members' injuries." Pls.' Resp. Br. 14-15. But Plaintiffs fail to show that this "causal link" can be established using *classwide* evidence. They defend certification of the menthol classes exclusively by arguing that their "price-premium damages model" provides the needed common proof. *Id.* at 15, 17. But as explained below, that model would not measure the price premium (if any) relating to the menthol theory—that is, the premium resulting from a belief that the tobacco in NAS menthol cigarettes does not contain any natural, migrated menthol. *Infra* Part II. The model thus cannot provide common evidence that consumers paid more for NAS menthol cigarettes *because of* a false understanding of the "additive-free" descriptor—a dubious proposition on its face, and one that contradicts

the deposition testimony of every menthol class representative. *See* Defs.' Br. 12 (noting that all such representatives testified that they did not know or care where the menthol was located). Nor do Plaintiffs identify any other common evidence that they could use to establish the supposed "causal link."

The same is true for the unjust-enrichment claims—a point the district court recognized in denying certification of all unjust-enrichment claims *except* those under California law. 5 App. 23-24. As the court concluded with respect to the claims in other states, they would require individualized inquiry into "whether an individual consumer believed that … menthol was not an additive, and whether that consumer purchased the cigarettes on that basis." 5 App. 51-52; *see also id.* at 61-62, 97-98, 107-08, 113-14. But the California claim similarly turns on individualized evidence, Plaintiffs' arguments notwithstanding.

Indeed, Plaintiffs acknowledge that California courts have held that un-just-enrichment claims should not be certified where, as here, proving injustice turns on "individual circumstances." Pls.' Resp. Br. 22 (citing *Savaglio v. Wal-Mart Stores, Inc.*, 2003 WL 25676640, at *26 (Cal. Super. Ct. Nov. 6, 2003)). They try dismissing *Savaglio* as an unpublished decision involving "rest breaks and meal periods." Pls.' Resp. Br. 22. But *Savaglio* shows what other courts have recognized: There are "no distinguishing features of California's law of unjust enrichment" that allow class treatment of such inherently individualized claims.

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, 2012 WL 379944, at *32 (D.N.J. Feb. 6, 2012). Because (again) Plaintiffs have no *classwide* means of proving injustice (because their damages model cannot supply this proof), the district court should have reached the same conclusion under California law as for the other relevant states: Plaintiffs' unjust-enrichment claim turns on individualized issues that will predominate over any common ones, foreclosing certification.

## II.    Plaintiffs' damages model does not fit their menthol theory of liability.

Even if Plaintiffs' menthol theory did not turn on individualized *liability* questions—it does—the district court erred in certifying the six statewide menthol classes because Plaintiffs have no classwide means of proving *damages*. Their damages model does not fit their menthol theory of liability, as *Comcast* requires for Rule 23(b)(3) certification.

**A.**    Plaintiffs stake their response on a misstatement, claiming that "Defendants do not dispute that the plaintiffs' damages model will accurately measure the price premium associated with the defendants' misleading label claims." Pls.' Resp. Br. 23. *Of course* Santa Fe disputes this—that is the heart of its *Comcast* argument (as to both of Plaintiffs' theories). Defs.' Br. 45-52, 61-66.

Plaintiffs can make this misstatement only by reframing their menthol theory of liability. That theory has never been predicated on Santa Fe "misleading" consumers generally about the nature of NAS menthol cigarettes (Pls.' Resp. Br.

23), but on a specific allegation that Santa Fe led consumers to believe that the tobacco in NAS menthol cigarettes was free of any added menthol, when in fact some menthol migrates into the tobacco from the filter. *E.g.*, Pls.' Resp. Br. 33. Again, Plaintiffs allege that they "purchased, purchased more of, and/or paid more for Natural American Spirit cigarettes than they would have *had they known the truth*." 1 App. 178, ¶ 88 (emphasis added). In the context of the menthol theory, "know[ing] the truth" means knowing that the tobacco in NAS menthol cigarettes was indeed free from all additives—except some migrated, natural menthol. Plaintiffs' damages model therefore must measure the price premium attributable to *that* alleged wrongdoing, meaning the difference between the value to menthol consumers of: menthol cigarettes with no additives in the tobacco, and menthol cigarettes with no additives except for natural, migrated menthol. Defs.' Br. 61-62. After all, it would be surprising indeed if *menthol* smokers believed their cigarettes contained *no menthol.*

But Plaintiffs do not dispute—including in their most recent brief—that their proposed damages model would *not* isolate that amount. Indeed, their damages expert, Dr. Dubé, conceded that the model would not even *try* to do this. 1 Supp. App. 161; *see also* 3 App. 105, 108. Instead, his model would treat the entire value of the "additive-free" descriptor as damages. Plaintiffs and their expert thus confirm the disconnect between their theory of liability and their

damages model—meaning their model "cannot possibly establish that damages are susceptible of measurement across the entire class." *Comcast*, 569 U.S. at 35.

Against this, Plaintiffs contend that prevailing on their menthol theory would "mean[] a jury concluded that the defendants falsely represented that the tobacco in their menthol cigarettes was additive-free." Pls.' Resp. Br. 36. But this framing erroneously treats the presence of additives as an all-or-nothing proposition, when the reality is much different. Plaintiffs do not dispute that the tobacco in NAS menthol cigarettes was free of all additives *other than* natural, migrated menthol. Plaintiffs' argument thus rests on the premise that *menthol* consumers are equally aggrieved whether their "additive free" *menthol* cigarettes contain tobacco with just that one additive (natural menthol) or a hundred others (including chemical additives found in competing brands). That premise is implausible, to say the least. And unsurprisingly, neither Plaintiffs nor Dr. Dubé have offered anything to substantiate it.

Given this reality, the value to consumers of "additive-free" tobacco in NAS menthol cigarettes necessarily includes value that Plaintiffs cannot claim as damages—the value of a cigarette that was in fact free of additives other than migrated menthol (with menthol, of course, serving as the very reason that consumers buy *menthol* cigarettes). Thus, while Plaintiffs repeatedly frame their menthol theory as one grounded in a "literally false" statement, that supposed

falsity applies only to a hyper-technical extent. And *Comcast* bars Plaintiffs from claiming damages that go any further.

**B.** None of Plaintiffs' cited decisions offers them any support, because none endorses their view that a damages model satisfies *Comcast* even if it would award as damages value that consumers in fact received.

Start with *Carriuolo v. General Motors Co.* (discussed at Pls.' Resp. Br. 26, 34). As Santa Fe has explained, the defendant there labeled a car as having "perfect five-star [safety] ratings" when in fact it had not been "assigned *any* safety ratings." 823 F.3d 977, 981-82 (11th Cir. 2016). Plaintiffs say what is significant is that the case thus involved a "literally false" representation. Pls.' Resp. Br. 34. But that misses the point: There is no possible value associated with the false claim of a five-star-safety-rated car that purchasers of that car—which in fact had *no* safety ratings—actually received. The plaintiffs' damages model thus properly reflected the fact that "a vehicle with three perfect safety ratings may be able to attract greater market demand than a vehicle with no safety ratings." 823 F.3d at 989 (citation omitted).

Here, by contrast, consumers received at least some value associated with the representation of "additive-free" tobacco—possibly *all* of that value, assuming menthol class members, like the menthol class representatives, did not care where in their cigarettes they could locate the menthol. *Supra* at 17-18.

Recognizing that distinction between this case and *Carriuolo* thus would not remotely mean "rejecting the Eleventh Circuit's view."[6] Pls.' Resp. Br. 34.

Other decisions that Plaintiffs—following the district court's lead—invoke are no different. The plaintiffs in *Hilsley v. Ocean Spray Cranberries, Inc.* were promised juices with "no artificial flavors" but received juices with, as Plaintiffs put it, a variety of "synthetic acids." 2018 WL 6300479, at *1-2 (S.D. Cal. Nov. 29, 2018); Pls.' Resp. Br. 35. Consumers thus did not get any of the benefit associated with a juice free of artificial flavors. The same goes for *Goldemberg v. Johnson & Johnson Consumer Cos.*: Consumers who purchased products with a host of "synthetic and artificial" ingredients received none of the value associated with products represented as containing "*only* high-quality natural ingredients." 317 F.R.D. 374, 382, 387 (S.D.N.Y. 2016) (emphasis added); Pls.' Resp. Br. 35. There was thus no basis for parsing the components of the price premium

---

[6] Other circuit decisions that Plaintiffs invoke are similarly inapposite. The issue in *Lytle v. Nutramax Laboratories, Inc.* was whether Dr. Dubé (also the damages expert there) needed to "actually conduct (i.e., 'execute') [his proposed] survey" at the certification stage; there was no question as to whether his proposed survey would fit the plaintiffs' theory of liability. 99 F.4th 557, 567 (9th Cir. 2024) (cited at Pls.' Resp. Br. 24-25, 34). And whereas Plaintiffs claim that the Second Circuit in *Waggoner v. Barclays PLC* approved a damages model that measured as damages some portion of a stock-price drop attributable to "other factors" beyond the "misleading statement" at issue (Pls.' Resp. Br. 26), the Second Circuit held that the model satisfied *Comcast* precisely because those "other factors" were "part of the alleged harm the Plaintiffs suffered"—meaning the model "directly measured" the harm from the allegedly wrongful conduct. 875 F.3d 79, 106 (2d Cir. 2017). That is exactly what Plaintiffs' model fails to do.

associated with the representations in those cases. These decisions are fundamentally different from this one, where the tobacco in the cigarettes bought by NAS menthol consumers was in fact free of all additives other than the menthol that was *the very reason why* consumers purchased that style of cigarettes.

Plaintiffs fare no better with *In re Dial Complete Marketing & Sales Practices Litigation*, where the defendant sold soap that falsely promised to "Kill[] 99.99% of Germs." 320 F.R.D. 326, 330 (D.N.H. 2017) (discussed at Pls.' Resp. Br. 35). For one thing, *Dial* said nothing about the fit between the plaintiffs' theory of liability and their damages model, instead focusing on the defendants' arguments that the model "does not actually measure a market-determined price premium" at all. *Id.* at 333-34. But even setting that aside, the decision does not support Plaintiffs. They say that crediting Santa Fe's theory would mean that the damages model in that case needed to be tied to "the actual percentage of germs [the soap] would kill." Pls.' Resp. Br. 35. But the *Dial* plaintiffs made a very different claim: They argued that "Kills 99.99% of Germs" was a promise of "superior efficacy," and that they received *none* of the value of that claimed superior efficacy. 320 F.R.D. at 333. It is thus unsurprising that the court allowed a damages model that calculated the full value of that "superior efficacy claim." *Id.* at 333, 337. Here, by contrast, Plaintiffs received essentially all of the value associated with the "additive-free" descriptor, and claim that the

descriptor deceived consumers in only a limited way. Their damages model thus must reflect that limited theory of deception to satisfy *Comcast*.

Finally, Plaintiffs' only new citation, *Allen v. Conagra Foods, Inc.*, 331 F.R.D. 641 (N.D. Cal. 2019), is like the rest. *Allen* involved a class of purchasers of "spray butter" who alleged that the product was falsely labeled as "fat free" when that was true only if it was consumed in certain quantities. *Id.* at 651. Plaintiffs say this case refutes Santa Fe's point that consumers who were promised "fat-free" milk, but given milk with 0.001% fat, would need a model that counts as damages only the harm attributable to the presence of the trace amounts of fat. Defs.' Br. 63-64; Pls.' Resp. Br. 36-37. *Allen* does nothing of the sort. The defendants there did not argue that the measure of damages needed to be tied to the specific amount of fat in the spray butter; their *Comcast* argument was that the model failed because it did not screen out consumers who consumed the butter "within the recommended serving size—and accordingly were not injured because they got a product with zero fat and zero calories (per serving)." 331 F.R.D. at 673. That case in no way undermines Santa Fe's position.

The upshot: None of these decisions supports Plaintiffs' attempt to use a model that treats as damages value that consumers indisputably received. To satisfy *Comcast*, Dr. Dubé's proposed model would need to be capable of measuring the premium attributable to the idea that the tobacco in NAS *menthol*

cigarettes would not contain *menthol*—instead of seeking a windfall by claiming as damages the value to consumers of something they indisputably received: tobacco free of chemical additives. But Plaintiffs and Dr. Dubé have refused to try putting forth such a model (perhaps because such a model would obviously produce between zero and *de minimis* damages).

**C.**     In sum, Plaintiffs concede that their proposed damages model might well be overinclusive, but insist that this is at most "a merits question" that is "only relevant *after* 'certifi[cation].'" Pls.' Resp. Br. 32-33 (citation omitted). In other words, proving damages—like proving purchases—is an issue that Plaintiffs seem to hope they never have to address.

*Comcast* forbids that "not now, maybe later" approach. The Supreme Court was unequivocal: "*[A]t the class-certification stage* (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'" 569 U.S. at 35 (emphasis added; citation omitted). Accordingly, "*for purposes of Rule 23*, courts must conduct a 'rigorous analysis' to determine whether that is so." *Id.* (emphasis added).

Plaintiffs thus cannot push their overstated damages model through on the theory that the problems with that model can be dealt with later. Because their model does not fit their menthol theory, "it cannot possibly establish that

damages are susceptible of measurement across the entire [menthol] class[es] for purposes of Rule 23(b)(3)." *Id.* This independently requires reversing the certification of the six menthol classes.

## CONCLUSION

With respect to Santa Fe's cross-appeal, this Court should reverse the portion of the district court's order certifying six statewide menthol classes.

Dated: September 3, 2024                    Respectfully submitted,

*/s/* Melanie B. Stambaugh

Melanie B. Stambaugh
**RODEY, DICKASON,
SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
mstambaugh@rodey.com
505-768-7288

David M. Monde
**JONES DAY**
1221 Peachtree Street NE
Suite 400
Atlanta, GA 30309
dmmonde@jonesday.com
404-521-3939

Meir Feder
Sharyl A. Reisman
**JONES DAY**
250 Vesey Street, Floor 34
New York, NY 10281
mfeder@jonesday.com
sareisman@jonesday.com
212-326-3939

Noel J. Francisco
William D. Coglianese
**JONES DAY**
51 Louisiana Drive NW
Washington, DC 20001
njfrancisco@jonesday.com
wcoglianese@jonesday.com
202-879-3939

*Counsel for Defendants-Appellees & Cross-Appellants
Santa Fe Natural Tobacco Co.,
Reynolds American Inc., and R.J. Reynolds Tobacco Co.*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(C) because it contains 6,311 words. It complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Calisto MT font.

Dated: September 3, 2024

*/s/* Melanie B. Stambaugh

Melanie B. Stambaugh
*Counsel for Defendants-Appellees/*
*Cross-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2024, I electronically filed the foregoing brief with Clerk of the Court for the U.S. Court of Appeals for the Tenth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

Dated: September 3, 2024      */s/* Melanie B. Stambaugh

                                     Melanie B. Stambaugh
                                     *Counsel for Defendants-Appellees/*
                                     *Cross-Appellants*